MATTER OF BUSTILLOS-RUIZ

In EXCLUSION Proceedings

A–13040423

*Decided by Board August 7, 1962*

(1) Retention requirements of section 301(b), Immigration and Nationality Act, as amended by section 16, Act of September 11, 1957, may be satisfied by a United States citizen resident of Mexico who commutes to his employment in the United States, even though he has never established a residence in the United States.

(2) The retention provisions of section 301(b), Immigration and Nationality Act, as amended by section 16, Act of September 11, 1957, that a United States citizen come to the United States and be continuously physically present for at least five years, do not require the taking up of a residence in the United States. cf. *Matter of Bustillos-Ruiz*, Interim Decision #1256.*

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without visa.

An order entered by the special inquiry officer on March 29, 1962, excludes this applicant as an alien immigrant not in possession of a valid immigration visa (8 U.S.C. 1182(a)(20)). The special inquiry officer concludes that the applicant failed to retain his United States citizenship derived by birth abroad to parents one of whom was a citizen of the United States, because he did not come to the United States prior to attaining the age of 23 years and therefore is required to have documentation. The case has been certified by the special inquiry officer for an interpretation of section 301(b) of the Immigration and Nationality Act (8 U.S.C. 1401(b)) as modified by section 16 of Public Law 85–316 (Act of September 11, 1957) and for final decision.

· The applicant, a married male, 24 years of age, sought to enter the United States through the port of El Paso, Texas, on February 4, 1962. He applied for entry as a United States citizen and was detained for an exclusion hearing.

The applicant was born in Mexico on January 2, 1938, of lawfully married parents one of whom was a citizen of the United States, the

*See also, Matter of *Flores-Maldonado*, Int. Dec. No. 1235.

other an alien. He was issued a United States citizen identification card on September 2, 1954, when 16 years of age (p. 2 of Ex. 2). It is conceded that the applicant acquired United States citizenship under the provisions of Revised Statute 1993, as amended by the Act of May 24, 1934.

The applicant has come to the United States for employment on numerous occasions during the period 1954 to February 4, 1962. He has resided in the United States for periods of one to six months during the course of his employment. From September 1960 through the first week of July 1961 the applicant was employed in El Paso, Texas, and commuted daily from his home in Juarez, Mexico. Since July of 1961 the applicant has been employed in the United States at Delano, California, from August 24, 1961, to on or about November 24, 1961; at Columbus, New Mexico, during the month of December 1961, and he resided in his mother's home in El Paso, Texas, while not employed from January 1, 1962, until January 13, 1962.

The applicant has never established a residence in the United States. He has always entered the United States heretofore as a citizen. The special inquiry officer concludes that the applicant now requires an immigration visa to enter because he is no longer a citizen by reason of the provisions of section 301(b) of the Immigration and Nationality Act (*supra*).

Loss of nationality by a person born outside of the geographical limits of the United States or its outlying possessions of parents one of whom is an alien and the other a citizen who has had ten years' physical presence in the United States prior to the birth of such person [1] is governed by section 301(b) of the Immigration and Nationality Act (8 U.S.C. 1401(b)). Section 301(b) provides that such person shall lose his United States nationality derived at birth "unless *he shall come to the United States* prior to attaining the age of 23 years and shall immediately following *any such coming* be continuously *physically present* in the United States for at least five years: Provided, That such *physical presence* follows the attainment of the age of 14 years and precedes the age of 28 years." (Emphasis supplied.)

Realizing that the five-year continuous physical presence provision of section 301(b) as originally enacted created a hardship for many citizens born outside of the United States whose families continued to reside abroad, the Congress enacted section 16 of Public Law 85-316 (Act of September 11, 1957).[2] Section 16 of the Act of September 11, 1957, provides that in the administration of section 301(b) (*supra*)

---

[1] Paraphrase from section 301(a)(7) of the Immigration and Nationality Act (8 U.S.C. 1401(a)(7)).

[2] See U.S. Code Congressional and Administrative News, Vol. 2, 85th Cong., 1st Sess.—pp. 2019 and 2020.

"absences from the United States of less than 12 months in the aggregate, during the period for which continuous physical presence in the United States is required, shall not be considered to break the continuity of such physical presence."

Section 301(b) of the Immigration and Nationality Act differs from its predecessor, section 201(g) of the Nationality Act of 1940. The present statute requires that the child *"shall come to the United States"* prior to attaining the age of 23 years while section 201(g) provided that the child "must *reside* in the United States" for a total of five years between the ages of 13 and 21 years. [Emphasis supplied.] Notwithstanding the difference in language the special inquiry officer is of the opinion that in order for the foreign-born child to retain his citizenship under section 301(b) (*supra*) he must enter the United States for permanent residence before attaining the age of 23 years, and shall thereafter be physically present in the United States for at least five years following any such entry prior to age 23 and after age 14. The special inquiry officer is also of the opinion that section 16 of Public Law 85-316 (*supra*) avails the applicant nothing because as a condition precedent to computing allowable absences from the United States the foreign-born citizen child must "take up a residence in the United States" prior to his 23d birthday.

The special inquiry officer refers to several congressional committee reports[3] as the basis for his conclusion in this regard. It is true that the Senate committee did recommend in its report of April 20, 1950 (#1515, footnote 1) that the "child born abroad of one citizen parent and one alien parent must in order to retain his United States citizenship enter the United States for permanent residence before attaining the age of 23." The committee, however, prefaced this recommendation with a statement that ". . . the provisions of existing law relative to citizenship of children born abroad of a citizen parent or parents are confusing and difficult to administer and interpret, particularly with reference to residence requirements, both of parents and children." Senate Report #1515 accompanied the first "omnibus bill" introduced by Senator McCarran on April 20, 1950. There were three revisions of his original bill prior to the introduction of a final version in the form of a "clean bill," S-2550, on January 29, 1952.

The House Committee on Immigration in a later report, dated February 14, 1952, which accompanied House Resolution 5678, enacted as the Immigration and Nationality Act of 1952 on June 27, 1952, made no mention of an "entry into the United States for permanent resi-

---

[3] Senate Report #1515, 81st Cong., 2nd Sess., April 20, 1950, p. 713. Senate Report #1137, 82nd Cong., 2nd Sess., January 29, 1952, p. 39. House Report #1365, 82nd Cong., 2nd Sess., February 14, 1952, p. 33.

dence" in order to retain United States citizenship. This report merely states that:

> In order to retain citizenship derived through one citizen parent, the child is required to be physically present in the United States for a continuous period of five years between his 14th and 28th birthdays. (House Report 1365 to accompany House Resolution 5678 at page 76).

We are confident that it was the intent of Congress to eliminate the residential requirements for retention of citizenship formerly embodied in section 201(g) of the Nationality Act of 1940. The managers on the part of the House committee in their conference report accompanying the final version of House Resolution 5678 expressly state "The conferees believe that the final version of this legislation would preclude any strained construction which would distort its general purpose and its particular provisions." [4] It would certainly be a "strained construction" that would "distort" the retention provisions of the present Act if we were to equate such phrases as "must reside in the United States" and "has not taken up residence in the United States," the language used in the retention provisions of former section 201(g), with the phrases "he shall come to the United States" and "be continuously physically present in the United States," the language found in the retention provisions of section 301(b) (*supra*).

The special inquiry officer maintains that this Board has ruled in two reported decisions that sections 301(a) through (c) of the Immigration and Nationality Act require the child to "take up residence in the United States before reaching the age of 23" in order to retain citizenship obtained by birth abroad (p. 9 of special inquiry officer's opinion citing *Matter of S—*, 8 I. & N. Dec. 221, and *Matter of S—*, 8 I. & N. Dec. 226 (December 23, 1958)). The issues in both cases are concerned with whether citizenship, lost under sections 201(g) and (h) of the Nationality Act of 1940, is restored by sections 301(b) and (c) of the Immigration and Nationality Act. It was our original belief that the savings clause found in section 405(c) of the 1952 Act controlled rather than the provisions of section 301(c) which reads "subsection (b) shall apply to a·person born abroad subsequent to May 24, 1934." We overruled our formed decision [5] and ordered both applicants admitted notwithstanding the fact that they both arrived subsequent to their 23rd birthday. The evidence established that they were prevented from complying with the retention provisions of the 1952 Act by the previous erroneous interpretation of sections 301 (b) and (c).

---

[4] Conference Report, House #2096. U.S. Code Congressional and Administrative News, 82nd Cong., 2nd Sess., Vol. 2 at p. 1754.

[5] *Matter of B—*, 5 I. & N. Dec. 291, BIA, 1953.

While it is true that in both of the cited cases we have used the phrase "take up permanent residence" in the text of the opinions, it is clear that the use of this phrase is not germane to the issue involved and may be considered "obiter dictum." The decision of the Regional Commissioner in the *Matter of M—*, 7 I. & N. Dec. 646, 650 (February 13, 1958) states the correct rule as follows:

In order to retain his United States citizenship and in accordance with Sections 301 (b) and (c) of the Immigration and Nationality Act, applicant (is) required to come to the United States prior to his attainment of the age of 23 years and immediately following any such coming to be physically present in the United States for at least five years, which physical presence period must follow the attainment of the age of 14 years and precede the age of 28 years.

The applicant meets the first test set forth in *Matter of M—* (*supra*). He came to the United States prior to attaining the age of 23 years. The question to be resolved is whether it is mathematically possible for the applicant to establish a continuity of five years of *physical presence* in the United States prior to attaining the age of 28 years on January 2, 1966. (Emphasis supplied.)

The question is complicated by the fact that the applicant was physically present in Mexico for various periods of time ranging from approximately 12 hours to several weeks between his 23rd birthday on January 2, 1961, and the date he sought to enter the United States as a citizen some 13 months later on February 4, 1962. However, if the applicant's absences aggregate "less than 12 months * * * following any * * * coming (to the United States) * * * prior to attaining the age of 23 years," then such absences do not break the continuity of the required five years of physical presence in the United States (section 301(b), Immigration and Nationality Act as amended by Public Law 85–316) (8 U.S.C. 1401(b) and 1401b).

The mathematical computation of the applicant's absences in Mexico between his 23rd birthday on January 2, 1961, and the date he was excluded at El Paso, Texas, on February 4, 1962, is found in Appendix A. Based upon the record of the applicant's testimony our computation shows that he was absent in Mexico a total of 178½ days or approximately six months during this period. This figure is computed on the basis of 12 hours' physical presence in the United States while commuting daily from Juarez, Mexico, to his employment in the United States. We have also charged the applicant with absences in Mexico when the record discloses that he had a day off [6] or was unem-

---

[6] The applicant testified concerning his employment at the Auto Center Car Wash, El Paso, Texas, as follows:—"I worked 7 days a week except sometimes when I was given Monday off but this was not all the time." (pp. 6 and 7). The applicant also testified that he had Wednesdays off while working at the Diff's Car Wash in El Paso, Texas (p. 8).

ployed. We realize that he may have entered the United States during this period in search of employment, but we have no way of ascertaining such entries.

The applicant's absences from the United States during the five-year period between his 23rd and 28th birthday aggregate approximately six months. Accordingly, when the applicant applied for admission on February 4, 1962, some 13 months after his 23rd birthday, it was impossible for him to acquire five years of physical presence in the United States prior to his 28th birthday (January 2, 1966) unless the aggregate of his absences for a period immediately preceding his 23rd birthday amounts to less than six months. The statute provides that the applicant may acquire the required five years of physical presence at any time subsequent to his 14th and prior to his 28th birthday provided he comes to the United States before he attains the age of 23 years (8 U.S.C. 1401(b)). There must be, however, a continuity of actual physical presence in the United States totaling five years prior to attaining the age of 28 years and this five-year period must be not be interrupted by total absences which aggregate 12 months or more (8 U.S.C. 1401b).

Concerning the applicant's physical presence in the United States for a period immediately preceding his 23rd birthday, the record discloses that he commuted from his home in Juarez, Mexico, to his employment at the Auto Center Car Wash, El Paso, Texas, for the period September 1, 1960, through January 1, 1961. According to our computation, based upon the applicant's testimony (pp. 6 and 7), he was physically present in the United States for approximately 60 days during this period (see Appendix B).

The applicant, had he been admitted on February 4, 1962, could have acquired three years and eleven months of physical presence prior to his 28th birthday on January 2, 1966. Between January 1, 1961, his 23rd birthday, and February 4, 1962, the date he applied for admission, the applicant was physically present in the United States for a total of seven months. The aggregate of the applicant's absences in Mexico for the period September 1, 1960, to February 4, 1962, amounts to approximately eight months during this 17-month period. The applicant's potential and actual physical presence in the United States as of February 4, 1962, totals four years and eight months for the period September 1, 1960, to January 2, 1966.

The question resolves itself into whether it can be established on this record that the applicant can acquire five years of physical presence in the United States prior to his 28th birthday which is not interrupted by total absences aggregating 12 months or more during a period subsequent to January 1, 1960, and prior to February 4, 1962. According to our computation the applicant must have more than four

65

months of physical presence in the United States during the eight-month period, January 1, 1960, to September 1, 1960, as we have accounted for absences which aggregate approximately eight months for the 17-month period, September 1, 1960, to February 4, 1962.

The applicant testified that "during the slow part of the season" (January to September) when he was not employed as an agricultural worker he would obtain employment in "the restaurant and construction business" for periods of "one day, three days, maybe a week" (pp. 13 and 14). The applicant also testified he was employed on a ranch at Columbus, New Mexico, from September 1, 1959, through December 31, 1959 (pp. 12 and 13). He would work on the ranch for a period of 15 to 22 days and then returned to Mexico for "a few days up to a week" after which he would again return to the ranch and that this kept up during the whole season (pp. 12 and 13).

We are unable to compute on the basis of the foregoing testimony whether the applicant has sufficient physical presence in the United States during the period January 2, 1960, to September 1, 1960, which when added to his actual and potential physical presence of four years, eight months, as of the date he sought to enter (February 4, 1962) would make it mathematically possible for him to have a continuity of actual and potential physical presence totaling five years prior to his 28th birthday (January 2, 1966).

By the same token we are unable to compute on the basis of the record as it now stands whether it is mathematically possible for the applicant to acquire a continuity of five years of physical presence running from a date certain while employed at Columbus, New Mexico, in the fall of 1959 to a date certain in 1965. There is the possibility that the applicant during the period September 1959 to February 4, 1962, a span of some two years, five months, has been physically present in the United States for periods which total more than one year, five months, with absences which aggregate less than 12 months.

Here we are concerned with loss of nationality acquired at birth. Every effort should be made to establish compliance with section 301 (b) as amended by section 16 of Public Law 85–316 (8 U.S.C. 1401(b) and 1401b). We are mindful of the fact that the burden is upon the applicant to establish his admissibility as a citizen of the United States. We note, however, that the only evidence with regard to the applicant's physical presence in the United States for the period January 1, 1960, to September 1, 1960, is his testimony that he was intermittently employed in restaurants and in the construction business for periods of "one day, three days, maybe a week."

We will, under the circumstances, remand the case to the special inquiry officer for additional evidence of the applicant's physical presence in the United States during the period January 1, 1960, to Sep-

tember 1, 1960. Evidence should also be developed as to whether it is mathematically possible to establish the applicant's physical presence in the United States from a date certain in the fall of 1959 to a date certain in 1965 which has a continuity of five years and which is not interrupted by total absences which aggregate 12 months or more.

**ORDER:** It is directed that the hearing in this case be reopened for the purposes stated in the foregoing opinion.

*It is further directed* that the case be certified to the Board of Immigration Appeals for final decision pursuant to 8 CFR 3.1(c).

## APPENDIX A

*Computation of the Applicant's Physical Presence in Mexico Between Jan. 2, 1961. His 23d Birthday and Feb. 4, 1962, the Date He Applied for Admission at El Paso, Tex.*

| Period | Total days in period | Activity | Days off and weekend trips to Mexico | Total days in Mexico | Record page |
|---|---|---|---|---|---|
| Jan. 2, 1961–May 15, 1961. | 134 | Employed Auto Center Car Wash, El Paso, Tex. | Monday off estimated, 4. | *69 | pp. 6 and 7. |
| May 16, 1961–May 22, 1961. | 7 | Unemployed | | 7 | p. 8. |
| May 23, 1961–July 9, 1961. | 48 | Employed Diff's Car Wash, El Paso, Tex. | Wednesdays off, 6 | *27 | pp. 7 and 8. |
| July 10, 1961–Aug. 23, 1961. | 44 | Unemployed | | 44 | p. 8. |
| Aug. 24, 1961–Nov. 24, 1961. | 93 | Employed as agricultural laborer, Delano, Calif. | No return trips to Mexico. | | pp. 8 and 9. |
| Nov. 25, 1961–Nov. 30, 1961. | 6 | Unemployed | | 6 | |
| Dec. 1, 1961–Dec. 31, 1961. | 31 | Employed as agricultural laborer, Columbus, N. Mex. | 24-hour weekend trips to Juarez, Mexico, 5. | 5 | p. 9. |
| Jan. 1, 1962–Jan. 13, 1962. | 13 | Resided with mother at El Paso, Tex. | No return trip to Mexico. | | p. 9. |
| Jan. 14, 1962–Feb. 4, 1962. | 22 | Employed picking cotton, Anthony, Tex., 3 days. | Entered United States 7 a.m.— return to Mexico 6 p.m. | 20½ | p. 10. |
| Total | 398 | | | 178½ | |

*Computed on the basis of eight hours of employment and 4 hours travel and lunch time.

## APPENDIX B

*Computation of the Applicant's Physical Presence in Mexico for the 4-Month Period Prior to His 23d Birthday on Jan. 2, 1961*

| Period | Total days in period | Activity | Days off | Total days in Mexico | Record page |
|---|---|---|---|---|---|
| Sept. 1, 1960, through Jan. 1, 1961. | 123 | Employed Auto Center Car Wash, El Paso, Tex. | Mondays off, 4 | *63½ | pp. 6 and 7. |

*Computed on the basis of 12 hours' employment, travel and lunch time in the United States and allowing 4 Mondays as time off spent in Mexico out of a total of 17 Mondays in this period.